## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| LAURAS INTERNATIONAL (USA) LLP, an Illinois limited liability partnership, and Its affiliate, LAURAS INTERNATIONAL CANADA, INC., | No. 24-cv-00881 |
| Plaintiff, | Judge John F. Kness |
| v. |  |
| HENSLEY CONSULTING LLC, a Kentucky limited liability company, RALPH TODD HENSLEY, individually, TIMOTHY PENNIX, individually, |  |
| Defendants. |  |

## MEMORANDUM OPINION AND ORDER

This case presents a jurisdictional question made more common by the nature of remote work: whether an employee who lives and works out-of-state, but nevertheless reports to, is supervised by, and occasionally works in-state, is subject to personal jurisdiction where the employer is located. In this case, Plaintiff Lauras USA,[1] a consulting firm based in Chicago, alleges that Defendants, consultants who worked for Lauras from Kentucky but who reported to the Chicago office, stole a Lauras client to start their own consulting business. Lauras sued in Illinois, where it is based. A s Defendants see it, because Defendants (1) now reside either in Kentucky

---

[1] Lauras International Canada, Inc., Lauras USA's Canadian affiliate, is also a Plaintiff.

or Alaska; (2) the client they allegedly stole was based in Alaska; (3) they were paid as independent contractors; and (4) Defendants obtained the client without physically setting foot in Illinois, Defendants lack the Illinois-specific minimum contacts necessary for personal jurisdiction in this forum.

Specific personal jurisdiction in the employment context, however, is not so myopic. Defendants purposefully availed themselves of the privilege of conducting business in Illinois by virtue of their contractual, commercial, and lengthy employment relationship with an Illinois company. This makes claims arising out of or relating to that relationship foreseeably, and fairly, subject to suit in Illinois. That is particularly true where, as here, Defendants reported to supervisors in Chicago and solicited an Illinois resident and Lauras employee to join their effort.

Before the Court are Defendants' motions to dismiss Plaintiffs' Amended Complaint (Dkt. 35) for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Dkt. 37, 39.) For the reasons stated below, Defendants' motions are denied.

## I.    BACKGROUND

Plaintiff Lauras International (USA) LLP ("Lauras USA") is an Illinois limited liability company based in Chicago that provides improvement support to businesses in the manufacturing, distribution, and healthcare industries. (Dkt. 35 ¶ 2.) Plaintiff Lauras International Canada, Inc. ("Lauras Canada") is an affiliate formed to comply with Canadian law to service clients in Canada, and is headquartered in Chicago. (*Id.* ¶ 3; Dkt. 43-2 ¶¶ 6–7.)

According to Plaintiffs (together "Lauras"), Defendant Ralph Todd Hensley ("Hensley"), while under contract, leveraged his relationship with Lauras's client, the Alaska Native Tribal Health Consortium, Inc. ("ANTHC"), to steal a multimillion-dollar business opportunity for more work from the client. (Dkt. 35 ¶ 1.) Lauras asserts that Hensley learned of, and concealed from his employer, a lucrative opportunity for Lauras to perform additional services for ANTHC. (*Id.*) Rather than informing Lauras about the opportunity, Hensley recruited Defendant Timothy Pennix ("Pennix"), also an agent of Lauras, to breach his contract and join Hensley and his company, Defendant Hensley Consulting LLC ("Hensley Consulting) (together, the "Hensley Defendants"), in performing the ANTHC opportunity. (*Id.*) Lauras also alleges that Hensley solicited Dale Ludeman, an Illinois resident, to leave his employment with Lauras to work with Hensley and Pennix on the ANTHC opportunity. (Dkt. 43-2 ¶ 11.)

Defendant Hensley currently resides in Alaska but at the relevant time was a resident of Kentucky. (Dkt. 35 ¶ 5; Dkt. 40-2 ¶ 10.) Defendant Hensley Consulting is a Kentucky limited liability company with its principal place of business located in Paris, Kentucky, and is engaged in business consulting services. (Dkt. 35 ¶ 4.) Hensley Consulting was formed so that Hensley could be paid by Lauras as an independent contractor. (Dkt. 40-2 ¶ 9.) Defendant Timothy Pennix resides in Versailles, Kentucky. (Dkt. 35 ¶ 6.)

## A. Facts

According to Lauras, both Hensley and Pennix entered into written agreements governing their work with Lauras. (*Id.* ¶ 17.) Lauras alleges that Hensley

3

entered into an Employment Contract effective on or about October 15, 2012 for Hensley to be employed as a Senior Consultant with Lauras's USA office (the "Hensley USA Contract"). (*Id.* ¶ 18.) After the parties executed the contract, Hensley asked to be paid as an independent contractor rather than as a Lauras employee. (*Id.* ¶ 19.) To accommodate Hensley, Lauras began paying Hensley through Hensley Consulting, but Hensley otherwise continued to perform under the Hensley USA Contract. (*Id.* ¶ 20.) Lauras paid Hensley according to its normal payroll schedule and provided the same benefits to Hensley as for other employees, including paid annual leave and cell phone reimbursement. (*Id.* ¶ 21.)

The Hensley USA Contract includes (i) restrictions on Hensley's disclosure, possession, and use of Lauras's confidential and proprietary information, trade secrets, and intellectual property; (ii) post-employment restrictive covenants that prohibit Hensley for a period of one year from soliciting or transacting business with any Lauras client with whom he has worked, or solicit any employee or agent of Lauras to leave employment with Lauras; and (iii) required Hensley to provide at least four weeks' notice before he could terminate the contract. (*Id.* ¶ 23; *see* Dkt. 35-1 §§ 6–7, 8.1a, 10.) Hensley also performed work under a Consulting Agreement entered into with Lauras Canada on or about August 27, 2019 (the "Hensley Canada Contract"), which contains similar provisions. (Dkt. 35 ¶¶ 24–25.)[2]

Lauras further alleges that Pennix performed work for Lauras under a

---

[2] The Hensley Canada Contract, in the version attached to the complaint, does not appear to have been signed by Defendant Hensley. (Dkt. 35-1 at 22.)

Consulting Agreement he entered into on January 26, 2016 (the "Pennix USA Contract"); that contract includes provisions similar to the Hensley contracts. (*Id.* ¶¶ 26–27.)[3] Lauras also alleges that in addition to the Pennix USA Contract, on February 11, 2020, Pennix entered into a Consulting Agreement with Lauras Canada (the "Pennix Canda Contract"), which also includes similar provisions. (*Id.* ¶¶ 28–29.)

ANTHC was one of Lauras's main clients in the healthcare industry, and Alan Vierling was the client contact. (*See id.* ¶ 30.) Beginning in August 2022, ANTHC engaged Lauras to provide an analysis of ANTHC's patient housing, management, and access. (*Id.* ¶ 31.) After this initial engagement, ANTHC retained Lauras for more work. (*Id.*) Hensley, while working for Lauras, developed a business relationship with Mr. Vierling, and as an engagement with ANTHC was ending, Lauras claims that Mr. Vierling communicated to Hensley that ANTHC had more work for Lauras to perform over the next two years or more. (*Id.* ¶¶ 32–34.) Specifically, Lauras provides a February 20, 2023, email from Mr. Vierling to Hensley with the subject line, "what would Laurus [sic] work on for the next two years." (*Id.* ¶¶ 34–35.) Hensley concealed from Lauras this opportunity for more work. (*Id.* ¶ 36.) For instance, Lauras asserts that on April 13, 2023, Hensley intentionally misrepresented the status of Mr. Vierling's position at ANTHC in a text message to Nick Duffield ("Mr. Duffield"),[4] a Lauras owner, and that on April 21, 2023, Hensley texted Mr. Duffield that ANTHC would not be doing any more business with Lauras

---

[3] The Pennix USA Contract, in the version attached to the complaint, appears signed by Pennix, but not by Lauras USA. (Dkt. 35-1 at 37.)

[4] Mr. Duffield is a resident of California. (Dkt. 31 ¶¶ 3, 6.)

after its existing engagement terminated on May 5, 2023, despite ANTHC previously telling Hensley that it had more work for Lauras. (*Id.* ¶¶ 37–40.)[5]

Hensley abruptly gave three days' notice of his intent to terminate his agreements with Lauras, prompting Lauras to revoke Hensley's access to Lauras's Dropbox files. (*Id.* ¶ 41.) Hensley unsuccessfully tried to access the Dropbox files, but was eventually able to gain unauthorized access by logging on to Dropbox from his personal email account. (*Id.* ¶¶ 42–44.) Hensley then deleted and/or restricted access to ten highly confidential Lauras folders, including folders associated with client projects and documents containing Lauras's rates and project margins. (*Id.* ¶¶ 45–48.) Hensley still maintains exclusive access to these folders. (*Id.* ¶¶ 47–51.)

Hensley allegedly concealed the additional services ANTHC wanted Lauras to perform so that Defendants could perform the additional services instead. (*Id.* ¶¶ 52–57.) In doing so, Lauras alleges that Defendants stole an opportunity worth over $3,000,000, in violation of Hensley and Pennix's agreements with Lauras. (*Id.* ¶ 57.)

### B.    Claims

In Count I, Lauras brings a breach of fiduciary duty claim against Hensley and Pennix. (*Id.* ¶¶ 58–62.) In Count II, Lauras brings a claim of tortious interference for prospective economic advantage against all Defendants. (*Id.* ¶¶ 63–65.) In Count III, Lauras brings a claim for breach of contract against Hensley and Pennix. (*Id.* ¶¶ 66–71.) In Count IV, Lauras brings a claim for violation of the Computer Fraud and

---

[5] Specifically, Hensley texted Mr. Duffield, "Spoke with Alan [Vierling] last night. We will not be extending. We will finish on May 5th." (*Id.* ¶ 39.)

Abuse Act, 18 U.S.C. § 1030 *et seq*., against Hensley. (*Id.* ¶¶ 72–76.) In Count V, Lauras brings a common law fraud claim against Hensley. (*Id.* ¶¶ 77–81.) In Count VI, Lauras brings a claim for conversion and misappropriation of confidential information against Hensley. (*Id.* ¶¶ 82–90.) In Count VII, Lauras brings a claim for unfair competition against Hensley. (*Id.* ¶¶ 91–96.) Finally, in Count VIII, Lauras brings a claim of unjust enrichment against all Defendants. (*Id.* ¶¶ 97–99.)

### C.   Minimum Contacts

Lauras asserts that the Defendants have sufficient minimum contacts with Illinois. Lauras first argues that the contracts with Defendants supply ties to the state. For instance, the Hensley and Pennix Canada contracts identify either Chicago or Cook County as the sole venue for disputes. (*Id.* ¶¶ 9–10; Dkt. 35-1 at 22, 51.) The Hensley USA contract further states that Hensley "shall be employed out of [Lauras's] USA office based in Chicago." (Dkt. 35 ¶ 9; Dkt. 35-1 at 2.)

Lauras also highlights physical contacts between Defendants and Illinois. According to Lauras, the following contacts connect Hensley and Hensley Consulting with Illinois:

    a. Food distribution project in Illinois: 10 work weeks between January 2014-November 10, 2024;
    b. Food distribution project in Illinois: 22 work weeks between October 21, 2016-July 21, 2020;
    c. Healthcare project in Illinois: 2 work weeks between November 12, 2018-January 22, 2019;
    d. July 13, 2018 meeting in Chicago
    e. May 31, 2016-June 2, 2016 meeting in Chicago; and
    f. December 8, 2017 Todd Hensley and his wife attended the end of year Christmas party in Chicago.

(Dkt. 35 ¶ 11.) Lauras alleges that Pennix "had physical contacts with Illinois during

7

his performance of services for Lauras when he worked on a healthcare project in Illinois during the period November 12, 2018-November 19, 2018." (*Id.* ¶ 12.)

Lauras also highlights employment-related communications between Defendants and Illinois. For instance, Defendants were supervised by and communicated with Lauras's Chicago office multiple times per week. (*Id.* ¶ 15.) Lauras's email system shows that "Hensley and Pennix collectively sent to and received from residents of Illinois more than 12,000 emails during their employment with Lauras." (*Id.* ¶ 13). In addition, Lauras points out that Defendants' expense reimbursements were submitted to Lauras in Illinois and paid out of its Illinois bank account. (*Id.* ¶ 14.) Finally, Lauras alleges that Hensley "wrongfully solicited Dale Ludeman, a former agent of Lauras and a resident of Illinois, to work with them on the stolen ANTHC opportunity." (*Id.* ¶ 16; Dkt. 43-2 ¶ 11.)

### D. Procedural History

Lauras USA initially brought this case in arbitration, filing a statement of claims with the American Arbitration Association ("AAA") against the Hensley Defendants, Pennix, and non-party Dale Ludeman. (Dkt. 15 at 1–2; Dkt. 15-1.) Following questions as to whether the AAA was the proper forum, Lauras USA withdrew its arbitration demand and filed the present lawsuit. (Dkt. 15 at 2; Dkt, 22 at 2–3.) The Hensley Defendants moved to dismiss the original complaint, or in the alternative, to transfer venue to the Eastern District of Kentucky (Dkt. 14), arguing that the contracts were inapplicable because they did not reflect the actual dealings between Lauras and Hensley and that the Hensley Defendants did not have sufficient minimum contacts with Illinois. (Dkt. 15 at 2, 7, 13.) Defendant Pennix joined in the

motion. (Dkt. 18.) Plaintiffs then moved for leave to propound jurisdictional discovery. (Dkt. 22, 23.) Those motions remain pending before the Court. The Court held a telephonic status hearing on May 22, 2024, and Plaintiffs were given leave (Dkt. 34) to file an amended complaint to address the personal jurisdiction issue. Plaintiff filed the operative Amended Complaint on June 5, 2024. (Dkt. 35). Both the Hensley Defendants (Dkt. 39) and Pennix (Dkt. 37) now move to dismiss the Amended Complaint under Rule 12(b)(2), or alternatively, to transfer venue. The Hensley Defendants argue that there are insufficient minimum contacts with Illinois because the relevant focus of the purposeful availment analysis is where the alleged competing work and solicitation occurred, not the location of Lauras's office. (*See* Dkt. 40 at 5–7; Dkt. 44 at 4–6.) Pennix similarly argues that Plaintiffs do not allege sufficient minimum contacts between Pennix and Illinois. (Dkt. 37 at 7–8.)

## II.    STANDARD OF REVIEW

A motion under Rule 12(b)(2) tests the federal court's authority to exercise personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2); *see also uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Whether a federal court in Illinois has personal jurisdiction "is determined under Illinois' long-arm statute, which authorizes jurisdiction to the full extent permitted by the United States Constitution." *Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010). The United States Constitution permits jurisdiction if it would be "fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003)

(emphasis in original).

Once a defendant brings a motion to dismiss under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.* at 782. The precise nature of that burden depends on whether an evidentiary hearing has been held. *Id.* If an evidentiary hearing is held, the Plaintiff must establish jurisdiction "by a preponderance of the evidence." *Id.* When, however, the district court rules on a motion to dismiss based only on the submission of written materials, Plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (internal quotation omitted.) In resolving a Rule 12(b)(2) motion, the Court accepts as true all well-pleaded facts alleged in the complaint and reads the complaint liberally with every inference drawn in favor of the Plaintiff. *City of Chicago v. Equte LLC*, No. 21 C 518, 2022 WL 2132630, at *1 (N.D. Ill. June 14, 2022). If the Defendant "submits 'evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction.' " *Id. (*quoting *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019)). In evaluating "whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," such as any conflicts between the affidavits. *Purdue Rsch.*, 338 F.3d at 782 (internal quotation omitted).

Exercising personal jurisdiction is fair if the court has either general or specific jurisdiction over the defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). A court has general jurisdiction

over a defendant if the defendant has enough contacts with the state such that he or she is essentially "at home" in the state. *Id.* A court has specific jurisdiction over a defendant if the suit " 'arise[s] out of' the defendant's contacts with the forum." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 619 (7th Cir. 2022).

## III.   DISCUSSION

Plaintiffs disclaim that Defendants are subject to general jurisdiction. (Dkt. 42 at 8; Dkt. 43 at 6.) Accordingly, the Court considers only whether specific jurisdiction exists. In the absence of a forum selection clause, a Court has specific jurisdiction over a defendant if three requirements are met. First, the defendant must have "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state." *Tamburo*, 601 F.3d at 702. Second, "the alleged injury [must have arisen] out of the defendant's forum-related activities." *Id.* Third, "[t]he exercise of specific personal jurisdiction must [ ]comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.* Plaintiffs meet their burden to show a prima facie case for personal jurisdiction over each Defendant.

### A.   The Forum Selection Clause Permits Personal Jurisdiction Over Defendant Pennix

The Court first considers whether there are any valid forum selection clauses, the existence of which "renders any examination of the defendant's contacts with the forum state unnecessary." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011); *see Heller Fin. Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir.

1989) ("Challenges to personal jurisdiction may be waived by either express or implied consent."). Plaintiffs assert that Defendants entered into written agreements declaring Chicago as the "sole venue for the resolution" of any dispute arising under the agreement, citing the Hensley Canada Contract and the Pennix Canada Contract. (Dkt. 35 ¶ 9; Dkt. 35-1 at 22 § 20, 52 § 20; Dkt. 43 at 13.) Plaintiffs further point out that the Hensley USA Contract states that Hensley "shall be employed out of [Lauras's] USA office based in Chicago."[6] (Dkt. 35 ¶ 9; Dkt 35-1 at 2.)

### 1. *Hensley Canada Contract*

The Hensley Defendants argue that the forum selection clause in the Hensley Canada Contract is inapplicable because the Canada contract applied only to Lauras's Canadian clients, not ANTHC (which was a USA client). (Dkt. 15 at 10; Dkt. 35-1 at 21 § 13.2.) Defendants also argue that the contract is unsigned by Hensley (*see* Dkt. 35-1 at 22), rendering it invalid valid under the statute of frauds because the contract cannot be completed within a year. (Dkt. 15 at 11; *see* Dkt. 35-1 at 22; Dkt. 44 at 11–12.) Plaintiffs fail to respond to these arguments. (Dkt. 44 at 11–12.)

Although the Court declines, at this early stage, to find that the Hensley Canada Contract is inapplicable as a matter of law, the Hensley Defendants present "a strong showing" that the forum selection clause in the Hensley Canda Contract should be "set aside," given the questions raised as to the contract's applicability and that it is unsigned. *Moran Indus. v. Baker*, No. 10 C 7653, 2011 U.S. Dist. LEXIS

---

[6] While this provision is not a forum selection clause, that Hensley was based out of Lauras's Chicago office is relevant to the minimum contacts analysis. *See infra* Part II(B).

58795, at *2–3 (N.D. Ill. May 27, 2011). But for the reasons described below, *infra* Part II(B), the Court has personal jurisdiction over the Hensley Defendants by virtue of their substantial employment-related contacts with Illinois.

### 2. *Pennix Canada Contract*

The Pennix Canada Contract presents a more compelling case for applying the forum selection clause. It similarly specifies that "[a]ny dispute arising from, relating to, and/or concerning this Agreement shall be heard in the state or federal courts having jurisdiction over Cook County, Illinois," and that the "sole venue for the resolution of any disputes arising under this Agreement shall be the City of Chicago, Illinois." (Dkt. 35-1 at 51–52.) Unlike the Hensley Canada Contract, the Pennix Canada Contract is signed and dated. (*Id.* at 53.) As with the Hensley Defendants, Pennix argues that "the Pennix Canada Contract has nothing to do with the claims that Plaintiffs assert in its Amended Complaint" because ANTHC was not a client of Lauras Canada. (Dkt. 37 at 3, 8–9.)[7]

As Plaintiffs point out, however, Pennix argued the exact opposite position to the Arbitrator. Lauras USA initially brought this case in arbitration in the AAA based on an arbitration provision in the 2016 Pennix USA Contract. (Dkt. 43-2 ¶¶ 17–18.) Pennix subsequently executed the Lauras Canada Contract, which did not contain an arbitration provision but contained the forum selection provision. (*Id.* ¶ 18.) In its objection to Lauras's Statement of Claim in the AAA, Pennix argued that

---

[7] Pennix also argues that the Pennix USA Contract only applied for a period of two months and is similarly inapplicable. As that contract lacks a choice of venue provision, it need not be considered in this section. (Dkt. 37 at 3.)

the 2016 USA Contract was a short-term contract and was inapplicable to this dispute; instead, Pennix argued that the most recent agreement—the 2020 Canada Contract—governed the dispute. (Dkt. 43-1 at 4–5.) Pennix stated that "[t]he written agreement relied upon by claimant [the Pennix USA Contract] has been superseded by a subsequent agreement between the parties [the Pennix Canada Contract] that contains no provisions requiring arbitration. In fact, the parties' most recent agreement excludes the possibility of arbitration by requiring that disputes be resolved in the state or federal courts have jurisdiction over Cook County, Illinois." (*Id.* at 5.)

Plaintiffs ask that Pennix be judicially estopped to assert one position in the AAA and another in this Court. (Dkt. 43 at 12–14.) Pennix does not contest that he stated as much to the arbitrator. Pennix argues, instead, that judicial estoppel is inapplicable because there was no final determination in the arbitration matter. (Dkt. 45 at 3–5.) Although "judicial estoppel may apply to positions taken before an arbitrator," *Roche Diagnostics Corp. v. Selfcare Inc.*, 186 F. Supp. 2d 914, 926 (S.D. Ind. 2002), Pennix is correct that, formally, the doctrine of judicial estoppel does not apply because Pennix did not "prevail on [the] ground" asserted in the earlier forum, as Lauras withdrew its arbitration demand.[8] *Walton v. Bayer Corp.*, 643 F.3d 994, 1002 (7th Cir. 2011). Pennix's position before the Arbitrator is nonetheless revealing

---

[8] Pennix's statement in arbitration might, however, be a judicial admission. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681 (7th Cir. 2002) (Rovner, J., concurring). As this issue has not been briefed, it need not be decided now whether an admission made in arbitration is binding when the same case is brought in federal court.

and supports Plaintiffs' view that the parties understood the more recent contract to govern Pennix's employment relationship with Lauras. (*See* Dkt. 43 at 12–14; Dkt. 43-2 ¶¶ 14–18; Dkt. 35-1 at 51 § 13.2.) The Court will therefore enforce the forum selection clause. And as discussed below, even if this contract did not apply, Defendant Pennix has sufficient suit-related minimum contacts arising out of his employment relationship with Lauras for personal jurisdiction in Illinois.[9]

### B. Defendants' Commercial and Employment Relationship with an Illinois Company Constitutes Purposeful Availment

For the Court to exercise specific personal jurisdiction, Defendants must have purposefully availed themselves of the forum. This requirement "ensure[s] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (internal quotation marks omitted). Defendants' act conferring jurisdiction must therefore be related to the facts that give rise to the suit and "create a substantial connection with the forum State," and Defendants must be responsible for the relationship between themselves and the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). As the Seventh Circuit has clarified, the nature of the "purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue," and the minimum contacts analysis differs between breach-of-contract and tort claims. *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).

---

[9] Both the Pennix USA and Pennix Canda Contracts specify either courts or arbitration in Illinois as the proper forum. (Dkt. 52 at 35 § 12.2, 51 § 13.2.) These are significant minimum contacts between Pennix and Illinois that suggest this Court has personal jurisdiction over Pennix for a dispute arising out of or relating to Pennix's employment with Lauras, even if the forum selection clause were not enforced.

Accordingly, each type of claim will be considered separately.

>    1.   *Breach of Contract*

In Count III, Plaintiffs bring a claim for breach of contract against Defendants Hensley and Pennix. Personal jurisdiction for a breach-of-contract claim "turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state," and the minimum contacts analysis focuses on the "conduct during contract formation." *Id.* at 674 ("[I]t is only the 'dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis.' ") (cleaned up) (emphasis in original). The Court considers "(1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *Kukoc v. Banca Svizzer Italiana*, No. 23-CV-00261, 2024 WL 1363636, at *3 (N.D. Ill. Mar. 29, 2024) (quoting *AS Engine Leasing, LLC v. Vision Airlines, Inc.*, No. 14 C 1436, 2014 WL 6461760, at *3 (N.D. Ill. Nov. 18, 2014)). When parties engage "in an ongoing commercial relationship involving multiple contracts and repeated transactions over time, courts look to whether the forum contacts 'either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract' in dispute." *Flambeau, Inc. v. GDL Brokerage, Inc.*, No. 19-CV-359-JDP, 2019 WL 6877564, at *4 (W.D. Wis. Dec. 17, 2019) (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)).

Personal jurisdiction is proper over Defendants Hensley and Pennix for breach of contract. As an initial matter, Defendants argue that the focus of the minimum contacts inquiry should be on "where the alleged competing work and solicitation [of ANTHC] occurred." (Dkt. 44 at 6; *see also* Dkt. 37 at 7–8.) For a breach of contract claim, however, the focus is different. It depends on "Defendant's conduct during the contract formation," *Kukoc*, 2024 WL 1363636, at *3, and if there is an ongoing, longstanding commercial relationship with repeated transactions over time, the " 'entire course of contact' with respect to [the] business endeavor [is] relevant to the minimum-contacts analysis." *Flambeau*, 2019 WL 6877564, at *4 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)). The "crucial question" is whether Defendants could have reasonably anticipated being haled into court in Illinois for breach of the contract. *See Tekway, Inc. v. Agarwal*, No. 19-CV-6867, 2020 WL 5946973, at *6 (N.D. Ill. Oct. 7, 2020).

Defendants could reasonably have anticipated being haled into an Illinois court for breach of contract with their Illinois-based employer. Although Defendants argue that none of the written contracts is applicable (Dkt. 15 at 7–13; Dkt. 37 at 3–4), no Defendant disputes that they were paid for their work or that their connection to ANTHC arose out of their employment relationship. A contractual arrangement of some form applied.

As to whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois, this factor connects Hensley and Pennix to Illinois. The Hensley USA Contract, Pennix USA Contract, and Pennix Canada Contract were

17

each executed in Illinois. (Dkt. 43-2 ¶ 19.)[10] The Hensley USA Contract specified that Hensley was to be "employed out of [the Lauras] USA office based in Chicago." (Dkt. 35-1 at 2; Dkt 43-2 ¶ 3). Although Defendants argue that they primarily lived and worked outside Illinois (Dkt. 37 at 3–4; Dkt 40 at 7), Defendants traveled to Illinois in connection with their work for Lauras. (*See* Dkt. 43-2 ¶ 4 (detailing Hensley's work for Lauras in Illinois and that he attended the company's Christmas party in Chicago); Dkt. 40-2 ¶ 15 (Hensley states he "performed work for clients in Illinois); Dkt. 35 ¶ 12 (Pennix worked on a healthcare project in Illinois in 2018).)

As to whether payment was to be made in Illinois, this factor favors Defendants. Although Defendants were paid from Illinois accounts (Dkt. 43-2 ¶¶ 5, 20), that fact is irrelevant because it is Defendants' contacts that matter. *Walden*, 571 U.S. at 284; *see also Liqui-Box Corp. v. Scholle IPN Corp.*, No. 19 C 4069, 2020 WL 5593755, at *7 (N.D. Ill. Sept. 18, 2020) (location of Defendant's bank account is not a "purposeful contact between [Defendant] and Illinois.")

As to the remaining factors, each favors Plaintiffs' position. Both Defendants were physically present in Illinois, at times, in connection with their employment. As to whether the Illinois plaintiff or the out-of-state defendant initiated the transaction, both sides appear to agree that the relationship arose mutually and over time; Defendants' relationship with their Illinois employer supports personal jurisdiction. (*See* Dkt. 40-2 ¶¶ 5–10; Dkt. 43–2 ¶¶ 3–4, 14–16.)

---

[10] Hensley states that the negotiations took place in Delaware and Kentucky. (Dkt. 40-2 ¶ 6.) At this stage, for determining jurisdiction, Plaintiffs' affidavit controls when there is a dispute between the affidavits.

Finally, both Hensley and Pennix exchanged numerous telephone calls, text messages, and email contacts with Illinois as part of their work for Lauras, including collectively sending and receiving more than 12,000 emails with Illinois residents. (Dkt. 35 ¶ 13.) And Defendants were supervised by Lauras from Chicago and communicated with the Chicago office multiple times per week. (*Id.* ¶ 15.) These communications to and from Illinois support personal jurisdiction.

Taken together, these ties to Illinois are "enough . . . to support personal jurisdiction." *Tekway*, 2020 WL 5946973, at *6. Defendants "knowingly and voluntarily entered into an employment relationship with an Illinois corporation" and for years financially "reaped the benefits" of maintaining a relationship with a company in the forum state. *Id.* Hensley and Pennix's "open-ended" and "ongoing" relationship with their Illinois employer strengthens their ties to the forum, and it is not dispositive that Defendants only occasionally worked in Illinois. *Id.* at *6–7.

It is likewise significant that Hensley and Pennix reported to the Chicago office and repeatedly communicated with Illinois residents as part of their employment. As remote work has become more common, courts have found that such communication satisfies the minimum contacts inquiry. *See, e.g.*, *id.* at *7 (citing cases); *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2017 WL 4340123, at *4 (N.D. Ill. Sept. 29, 2017) (personal jurisdiction proper in Illinois despite remote employment in Oregon because Defendant accessed networks in Illinois and "communicate[d] regularly with her supervisor Noursalehi and others in [Plaintiff's] Naperville office."); *Liqui-Box*, 2020 WL 5593755, at *6 ("[T]hat [Defendant]

communicated with [his supervisor] in Illinois as part of his ordinary work duties establishes a connection between [Defendant's] employment and the state of Illinois."). Accordingly, the Court has specific personal jurisdiction over Hensley and Pennix with respect to the breach of contract claim.

### 2. Intentional Torts and Breach of Fiduciary Duty

In Count I, Plaintiffs bring a breach of fiduciary duty claim against Hensley and Pennix, and in Counts II, V, VI, VII, and VIII, Plaintiffs bring tort claims against various Defendants.[11] For tort claims, Defendants purposefully avail themselves of the forum state if there is (1) intentional conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. *Felland*, 682 F.3d at 674–75 (citing *Tamburo*, 601 F.3d at 703). There also must be a "state-specific connection" with Illinois beyond the tort injury itself. *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 523 (7th Cir. 2018). The focus is on "*defendant's* own contacts with the state, not the plaintiff's," to protect "the defendant against the burdens of litigating in a distant or inconvenient forum." *NBA Props. v. HANWJH*, 46 F.4th 614, 621–22 (7th Cir. 2022) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Defendants have sufficient minimum contacts with Illinois for the tort and

---

[11] Breach of fiduciary duty "sound[s] in tort," and the minimum contacts analysis is the same as for tort claims. *Sunny Handicraft (H.K.) Ltd. v. Edwards*, No. 16 C 4025, 2017 WL 1049842, at *5 (N.D. Ill. Mar. 20, 2017).

fiduciary duty claims. Defendants do not contest that the alleged conduct is intentional and tortious or that Plaintiffs were allegedly injured in the forum state. Rather, the parties contest whether Defendants' conduct was aimed at Illinois. The parties disagree as to how Defendants' employment-related ties to Illinois should factor. In Plaintiffs' view, these contacts matter because they are not random, fortuitous, or attenuated, but are rather the result of Defendants' own contacts with Illinois. (*See* Dkt. 42 at 11–12.) Defendants argue instead that their efforts to obtain ANTHC as a client were not expressly aimed at Illinois because these employment-related contacts are best seen as Plaintiffs' contacts, and that it is not enough for Defendants to merely know that injury will be felt in Illinois. (*See* Dkt 15 at 9–10; Dkt 37 at 7–8; Dkt. 40 at 6–7; Dkt 44 at 5–9.)

Defendants rely on *Green Light Nat'l, LLC v. Kent*, where plaintiff GLN, headquartered in Illinois, brought tort claims against a President of plaintiff's wholly owned Southeast subsidiary, S. Kent, and another individual, Richards, after defendants created a competitor while still employed by GLN. No. 17-CV-6370, 2018 WL 4384298, at *1–2 (N.D. Ill. Sept. 14, 2018). The claims against Richards were dismissed for lack of personal jurisdiction because GLN failed to allege "any action taken by Richards in Illinois," as stealing GLN's Illinois-based trade secrets and confidential information were not sufficient to confer jurisdiction. (*Id.* at *4–5.) But the court noted that Richards was not an employee of GLN at all and did not solicit any clients in Illinois. *Id.* at *5, n.3. *Green Light*, although helpful in elucidating the principle that merely committing a tort that causes injury in the forum state is not

sufficient for jurisdiction, is not particularly apt in answering whether a longstanding employment relationship factors into the personal jurisdiction analysis for tort claims tied to that relationship.

Other cases in this District, however, indicate that a longstanding employment relationship matters when analyzing the minimum contacts for tort claims against remote workers. *See, e.g.*, *Liqui-Box*, 2020 WL 5593755, at *6–7, 10 (finding a prima facie case of personal jurisdiction where Defendant's "remote employment was closely tied to Illinois and that [Defendant] obtained the information at the heart of this dispute from his Illinois-based employment."); *Opus*, 2017 WL 4340123, at *4 (finding sufficient minimum contacts for tort, fiduciary duty, and CFAA claims where "[a]ll of the allegations against [Defendant] stem from employment with [Plaintiff]," including accessing Defendant's networks in Illinois and regularly communicating with supervisor in Illinois).

The remote nature of Defendants' work does not preclude jurisdiction because "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *HANWJH*, 46 F.4th at 624 (internal quotation omitted). Acknowledging this, Defendants assert that Lauras's contacts with Illinois cannot be the basis for jurisdiction because the relationship must arise out of contacts "that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (internal quotation omitted). But an employment relationship is not a one-way street. Defendants purposefully availed themselves of the privilege of conducting business in Illinois by entering into a longstanding commercial and employment relationship

22

with Lauras and are fairly subject to personal jurisdiction for claims arising out of or relating to that relationship.

These are not attenuated tort claims like in the typical *Walden* case, in which a defendant's only tie to the forum is that the plaintiff was knowingly injured there. *See Ariel Invs.*, 881 F.3d at 522. Rather, this is more analogous to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, which rejected "a strict causal relationship between the defendant's in-state activity and the litigation" for personal jurisdiction to be proper. 592 U.S. 351, 362 (2021). As the Supreme Court explained, *Walden* concerns cases in which "only the plaintiffs had any contacts with the [forum] state . . . [and] the defendant[] had never taken any act to 'form a contact' of his own." *Id.* at 370 (quoting *Walden*, 571 U.S. at 290) (cleaned up). Where Defendants report to supervisors in Illinois and occasionally work in the forum state, however, the "issue is whether those contacts are related enough to the plaintiffs' suits." *Id.* at 371. As detailed below, *infra* Part II(C), the tort claims are closely related to Defendants' employment and are therefore "close enough to support specific jurisdiction." *Id.* (quoting *Walden*, 571 U.S. at 284).

Finally, Plaintiffs do allege that Hensley acted within Illinois as part of their effort to steal ANTHC; that is itself a sufficient minimum contact between the Hensley Defendants and Illinois.[12] Plaintiffs allege that the Hensley Defendants

---

[12] The Hensley Defendants try to draw a distinction between Hensley and Hensley Consulting. (*See, e.g.*, Dkt. 15 at 13.) However, the only members of Hensley Consulting are Defendant Hensley and his wife, (Dkt. 30 ¶ 2), and it appears that Hensley Consulting was created to pay Hensley for his Lauras work. (Dkt. 40-2 ¶ 9.) Accordingly, Hensley's minimum

wrongfully solicited Dale Ludeman, an Illinois resident and Lauras employee, to work with them on the stolen ANTHC opportunity. (Dkt. 35 ¶ 16; Dkt 43-2 ¶¶ 10–11.)[13] The Hensley Defendants respond by pointing out that Mr. Ludeman is not a Defendant in this matter (Dkt. 40 at 14–15), but Mr. Ludeman's non-party status has no bearing on whether his solicitation is a contact with Illinois. The Hensley Defendants also argue that any solicitation or harm would have occurred in Alaska or Kentucky. (*Id.*) Plaintiffs allege, however, that Mr. Ludeman was an Illinois resident employed with Lauras (Dkt 43-2 ¶ 11), and at this stage, Plaintiffs' affidavit is entitled to weight.

### 3. Computer Fraud and Abuse Act

In Count IV, Lauras brings a claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, against Defendant Hensley for unauthorized access to Lauras's network and cloud storage system, and the theft and willful destruction of Lauras's data. (Dkt. 35 ¶¶ 72–76.) Lauras alleges that after it revoked Hensley's access to Lauras's Dropbox files, Hensley gained unauthorized access by using his personal credentials and then deleted and/or restricted access to ten confidential Lauras folders, which Lauras now cannot access. (*Id.* ¶¶ 41–51.) Hensley argues that he lacks sufficient minimum contacts with Illinois with respect

---

contacts with Illinois also supply the minimum contacts for the tort claims against Hensley Consulting, as the two appear to be one in the same.

[13] Pennix argues that Plaintiffs do not state how he was involved in the Ludeman solicitation. (Dkt. 37 at 8.) Plaintiffs' affidavit states only that Hensley solicited Ludeman. (Dkt. 43-2 ¶ 11.) Accordingly, the Court considers the Ludeman solicitation as a minimum contact attributable only to the Hensley Defendants.

to the unauthorized use of confidential information because the "the relevant inquiry is not where a plaintiff and its confidential information are located; rather, it is where the defendant accessed and used such information." (Dkt. 44 at 8–9.)

Hensley relies on *Switchboard Apparatus, Inc. v. Wolfram* for the proposition that the location of Plaintiff's data cannot confer personal jurisdiction, and that instead personal jurisdiction exists only where Defendant accessed and use such information. No. 21 C 1665, 2022 WL 1591732, at *1 (N.D. Ill. May 19, 2022); (Dkt. 44 at 7–9.) In context, that argument is unpersuasive.[14] Hensley has significant employment-related contacts with Illinois. Hensley only could access or delete the documents because of that employment, and he did so in connection with his decision to terminate his relationship with Lauras. There is therefore a close connection between Hensley's Illinois-based employment and the CFAA claim.

Moreover, in the CFAA context, courts have found a Defendant's knowing access of computer files in the forum state to be a sufficient minimum contact. *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (personal jurisdiction proper in Florida for CFAA claim where Defendant knowingly and intentionally directed its emails into Florida because "that very same conduct serves as the basis for the claims [Plaintiff] brings against it."); *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 503–04 (D.N.J. 2017) (personal jurisdiction

---

[14] *Switchboard* concerned a similar set of circumstances in which an executive of an Illinois-based company joined a competitor, E&I, and allegedly brought along some of Plaintiffs' customers. 2022 WL 1591732 at *1. In *Switchboard*, however, the claim concerning the computer servers housed in Illinois was brought against E&I, the competitor that had no other ties to Illinois, and not, as here, against the employee. *Id.* at *6–7. That distinction matters because Defendants in this matter have existing suit-related ties to Illinois.

proper in New Jersey for CFAA where Defendants knowingly hacked Plaintiff's computer in New Jersey and deleted his personal email correspondence along with other files). Lauras alleges that Hensley deleted and/or restricted access to Lauras folders, thereby preventing Lauras from accessing its own information from its office Illinois. That is a sufficient contact.

### C.    The Claims Arise Out Of or Relate To Defendants' Contacts

For specific jurisdiction to exist, the incident in question must also "arise out of" or "relate to" the defendant's contacts with the forum state. *See Walden*, 571 U.S. at 284; *Tamburo*, 601 F.3d at 708. As the Supreme Court has explained, "arise out of or relate to" does not require strict causation. *Ford Motor Co.*, 592 U.S. at 362 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do . . . Some relationships will support jurisdiction without a causal showing."). But just because specific jurisdiction does not require strict causation does not mean that the arise-from-or-relate-to standard is limitless. *Id.* ("In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits."). Exercising specific jurisdiction has its limits because "*de facto* universal jurisdiction runs counter to the approach the Court has followed" for decades. *Advanced Tactical*, 751 F.3d at 801–02. Courts must therefore "ensure that the conduct and the litigation are related." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 862 (7th Cir. 2024).

This test is met. Defendants "entered into an employment relationship with an Illinois company, and the claims at issue arise out of that relationship." *Tekway,* 2020 WL 5946973, at *8. Defendants' employment was overseen in Illinois, necessitated

26

communication with Lauras employees in Illinois, and was occasionally performed in Illinois. The breach of contract claim arises out of this relationship, and the tort, fiduciary duty, and CFAA claims are closely related because Defendants were only able to steal ANTHC as a client or access Lauras' data through their employment.

### D. Fair Play and Substantial Justice

Finally, the Court must consider whether the exercise of specific jurisdiction over the defendants would comport with " 'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). That element "does not provide crisp, bright lines for district courts and litigants." *uBID*, 623 F.3d at 433. Rather, it "requires determinations in which few answers will be written in black and white. The greys are dominant and even among them the shades are innumerable." *Rudzewicz*, 471 U.S. at 486 n.29 (cleaned up).

The exercise of specific personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Defendants "knew they were working for a[n] [Illinois] company" and that the "essential functions" of their relationship with Lauras were "channeled through" Illinois. *Opus*, 2017 WL 4340123, at *4. There is nothing unfair about litigating in the forum where an employee had "frequent and substantial contact." *A&R Logistics Holdings, Inc. v. Curl*, No. 15 C 7106, 2015 U.S. Dist. LEXIS 125725, at *11 (N.D. Ill. Sep. 21, 2015); *see also Budget Rent A Car Corp. v. Crescent Ace Hardware*, No. 03 00930, 2003 WL 21673932, at *4 (N.D. Ill. July 16, 2003) (because of their "ongoing relationship with Plaintiffs,

27

Defendants could reasonably anticipate suit in Illinois.").

### E.     Venue

Defendants move in the alternative to transfer venue to the Eastern District of Kentucky. (Dkt. 37 at 10; Dkt. 40 at 15–16.) 28 U.S.C § 1404(a) provides that, even when venue is appropriate, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Factors to consider include whether "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 715 (N.D. Ill. 2023) (internal quotation omitted). As the party seeking transfer, Defendants have "the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Id.* (internal quotation omitted).

Defendants' motion to transfer venue fails. Venue is proper in both districts, but the Northern District of Illinois appears to be the more convenient forum. Plaintiffs are in Illinois and all Defendants traveled to Illinois, at least on occasion, as part of their employment. Hensley apparently now resides in Alaska, which makes venue in Kentucky equally as difficult for Hensley as maintaining the case in Illinois. A transfer is also not in the interest of justice, given the close Illinois connection to the employment relationships.

## IV.     CONCLUSION

For the foregoing reasons, the Court has personal jurisdiction over all

Defendants. Accordingly, Defendants' motions to dismiss (Dkt. 37, 39) are denied. As such, the motion to dismiss the Original Complaint (Dkt. 14, 15) and motions for leave to propound jurisdictional discovery (Dkt. 22, 23) are dismissed as moot.

SO ORDERED in No. 24-cv-00881.

Date: December 10, 2024

_____

JOHN F. KNESS
United States District Judge